Good morning, Your Honors, and may it please the Court to re-grant them a pairing on behalf of Austin Carey. I'd like to reserve two minutes for rebuttal. I'll try to help you. I'll do my best, Your Honor. Thank you. On September 6, 2016, Austin Carey was found in a tree in Yosemite National Park with a parachute deployed above him. The government subsequently charged Mr. Carey with a violation of 36 CFR section 2.1783, which prohibits delivering or retrieving a person or object by parachute, helicopter, or other airborne means unless the individual has a permit to do so. Well, or except in emergencies involving public safety or serious property loss. Are you saying that the government has to establish beyond a reasonable doubt in every case that there was not an emergency or serious property loss? That was not the argument that was raised below. It would follow necessarily that if this Court were to find that the absence of a permit was an element that the government had to prove, that likewise the absence of an emergency involving serious public safety. So doesn't that strongly suggest that these are this group of additions at the end of the sentence are affirmative defenses? Well, Your Honor, I think you have to look at, and this goes to that three-part test, the text and structure of the statute itself. You have to look at Voitch. And just going to that particular question, if Your Honor looks at section 2.17b, there are actually additional exceptions that are contained in that subsection b, which are not incorporated within the actual section that prescribes the conduct. Well, really, with respect, it seems to me what we're really talking about is two Supreme Court cases, McKelvey and Voitch, or however you say it. And we're talking about how you construe this statute. McKelvey would suggest, as my colleague has suggested, your client has the burden of proof to show an affirmative defense. On the other hand, Voitch seems to suggest that if it's an element of the defense, it's of course the other way around. I tell you, as I look at this, I look at the cases, I look at Wee, Singh, I look at King, Black, et cetera, I need to be persuaded by you that this is not an affirmative defense situation. Because I see the Voitch situation as being one where you have something like doctors, where you have a respected profession and they have certain expectations. And I see that as an exception. Why is that wrong? Well, Your Honor, the distinction between, I mean, obviously, Voitch, King, and Black all involved the doctors in the medical profession. Now, that's never – that was never explicitly part of those holdings in that it was only because these were individuals engaged in a medical profession. Kennedy. Right. But that was a common characteristic of the cases, right? That was a common characteristic. And I would note, you know, this Court decided last year in the Charette case, and this is cited in the government's brief at page 10, that case involved the taking of a grizzly bear without a permit. And this Court held in that case that it did constitute an affirmative defense that the defendant had to prove. Now, the reason the Court found that was because there was an explicit legislative history. And, in fact, it wasn't really just legislative history. Congress had specified within the Endangered Species Act specifically that when there is an exception, it is on the defendant to initially raise it such that it's an affirmative defense. So there, Congress knew how to act, and they acted. In this particular case, we're using this CFR that there is no real relevant legislative history to suggest that that burden was ever meant to be placed on the defendant. Well, the common sense of this is the same as it is in the grizzly bear, isn't it? That is, you can't take a grizzly bear unless you have a permit. So there's no question here that he parachuted into the park, and that's illegal unless he has a permit. Isn't it basically the same? If you look at the structure of the statute in the Constitution? It's very similar, but I think that's the reason why these cases look to either the text and structure of the statute itself, look to the legislative history. In the Charette case, this Court specifically said, what did Congress say about this issue? And Congress spoke very clearly on that issue, that when there's an exception like a permit in relationship to the Endangered Species Act, that is something that the defendant has to, you know, raise. But as you know, counsel, you're a good lawyer, and you know that if the meaning of the statute is plain on its face, we don't even get to legislative history. Our Court obviously felt it needed to in the Charette case. But in this case, we have a very different kind of situation. We have a regulation that was promulgated in connection with a statute. We might have some hour deference or something like that, but the reality is it doesn't help us much. So we have to look to what the Supreme Court and other authorities have said, and that's why I get back to, as I mentioned earlier, the two Supreme Court cases that seem to go different ways. And from my perspective, just as we did in the Charette case, it seems to me that this one fits into the category where it's an affirmative defense your client has to prove. What's your best argument that that's wrong? Well, Your Honor, it should be a taken-for-granted situation that whenever the word or language such as accept or unless appears within the statute, that it is thereby an affirmative defense. If that were the rule — Are you serious? Well, if that were the rule, why do other circuits, so say, for example, the Eleventh Circuit, which employs this three-part test, there isn't an automatic deference to the McKelvey rule. There is an analysis to say, well, let's look at the text and structure, which includes, I think, the analysis of Voitch and McKelvey. Let's look to the legislative history to see what Congress intended with this particular statute, notwithstanding that it bears resemblance to other statutes that have been found as affirmative defenses or where language had been found as affirmative defenses. And let's look at the party's relative ability to present evidence on the issue. I mean, that's why those courts look to those other factors. It's not — it wouldn't be — it wouldn't be a simple analysis of, well, this says accept. Automatically, that's an affirmative defense. I think that's a common understanding. That's a common principle. But you have to look and you have to perform this analysis, at least under the three-part test, or as we set — as I set forth in the brief, the Voitch case is simply irreconcilable with McKelvey. And that issue has not been resolved. I can't find a case. With respect, I disagree with you about that. I don't think that's true. The only thing that I find that's directly on point is this Utah District Court case, OTT or whatever it's called. What role, if any, should that play in our analysis? Well, certainly, it is persuasive authority. It's a district court who — who found that — that this particular permit language constituted an element of the offense. The — the district court there, the judge went through a thorough analysis similar to what was set forth. What was the judge? I've forgotten. Your Honor, I don't know if it talks about that. It would be Senior District Judge Jenkins, Your Honor. James? Jenkins. Jenkins. Okay. I think the Ox Court — So the Ox Court applied the three-part test used by the Second Circuit, a court I've vaguely heard of. It's not the Ninth Circuit, but it could have some persuasive authority. And one of the aspects of that test is the party's relative abilities to present evidence on the issue. When it comes to the permit, it's like equally easy, right? It would have been a very simple thing for the government to show there was no permit, but it would have been a very simple thing for you to show if you had a permit. So I'm not sure that the Ox case really analyzed that element correctly. Well, Your Honor, I would agree that there would be a relative ease for both parties. The government, as the issuer of the permit, obviously has access to those records, has access to their custodians. If Mr. Kerry chose not to testify, which is what happened in this case, he would not himself be able to introduce that evidence unless — But, of course, that's true of every affirmative defense, right? I mean, that doesn't resolve the question. If you have an alibi defense, you still have to raise it affirmatively even if you don't take the stand or whatever. Understood, Your Honor. We're trying to find out whether or not it is affirmative defense, and we're looking to whether or not the parties have — you know, which party has the relative ability — the easier ability to introduce that evidence. And, I mean, this wasn't an argument set forth at length in the briefs, but related to the public — the emergencies involving public safety or serious property loss. That, likewise, would be an extraordinarily difficult task for an individual to present as an affirmative defense, where, again, it's specifically referring to public emergencies. These are things that are within the access and control of the park, Yosemite National Park, within the access and control of the government. So, in that case, I think that factor does weigh in favor of considering it an element that needs to be proven by the government. And I would, again, direct the court to 2.17b, which contains further exceptions. So, these aren't exceptions that were incorporated within the statute, and I go back to Voitch on that. These are additional exceptions related to that this statute — this section should not be applicable to official business of the U.S. government, emergencies involving the superintendent, and landings due to circumstances beyond the statute. So, you're out of time. We're going to give you a minute in rebuttal, but why don't you — let's let us hear from the government. We'll give you an extra minute to come back and rebut. Okay? Thank you, Your Honor. Good morning. May it please the Court. Jeff Spivak for the United States. Based on the language of the statute, the structure and the history, as well as some of the Ninth Circuit case law interpreting, the question of element versus affirmative defense, we do believe the emergency and permit exception to 2.17a3 should be an affirmative defense. So, what do you make of the argument that was perhaps a bit belatedly made by your adversary a minute ago? The three exceptions that are set forth in the first section are all ones where you would think the government would be the natural person to establish that, whether there was an emergency involving public safety or serious property loss, or whether there was a permit. And so, if we read those together, the argument is that these were exceptions that were uniquely within the power of the government to show, certainly the emergency one. And therefore, it should be the government's burden to show that they are not applicable to the case you're prosecuting. I believe that the language of this statute is somewhat unclear on who is in a better position to prove the emergency or a permit. Certain things I can foresee being very difficult for the government to prove. For example, for emergencies affecting, for example, the defendant himself. This court in Gravenmire, a Ninth Circuit case looking at the statute prohibiting the possession of a machine gun, unless it was possessed before the passage of that statute in 1986, looked at which party would be in a better position to prove the existence of the facts that would support an exception and came down that even if the government could prove that, it didn't necessarily require the government to do it. It didn't make that burden one of the government's. Let me change the focus just a little bit. When the case was first prosecuted, the government conceded that the permit was an element of the crime. If the court disagrees with that, what do we do with that? If it were a fact, you'd be bound by waiver. But since this is a matter of law, what do we do with it? There's case law suggesting, and United States v. Miller is one such case, that misstatements of the law by the parties is not necessarily binding. And the role of the judge is usually to determine and apply the appropriate law. So the fact that the government misstated the elements, we don't think should be dispositive of the issue. We think the court should determine what the proper law was and whether the trial judge properly applied that law. Let's change the facts a little bit. Let's assume that there were a jury involved and that the jury instruction had stated that the existence or nonexistence of a permit was an element of the crime. What would that do to this case if that were the fact? I don't know, Your Honor. Frankly, I think it may change the analysis if the defense, for example, took a defense strategy based upon certain concepts that the government had urged throughout the course of the trial. And then at the last minute before the case is submitted to the jury, the government changed tact. It's a big deal, isn't it, if this is an element of the crime, in the sense that that's clearly the government's obligation. It has to be proven beyond a reasonable doubt. The government here has basically stipulated that it didn't offer evidence to that effect. So if they win or lose on that element, is it an element of the crime or is it an affirmative defense? Correct? Yes, Your Honor. Thank you. I want to make one comment on Vooch because I think the Court properly identified the conflict between, at least the parties' dispute about McKelvey v. Vooch. And I do think that the structure of 2.17a.3, the language and structure, does suggest that the exception is an affirmative defense. 2.17a, the following is prohibited. Sub 3, delivering a person or property by parachute or airborne means, except emergency or permit. Vooch is quite different. It says that participating or producing an abortion, unless medically necessary, is prohibited. You cannot reach the prohibition without passing through the exception. Dispositive of the issue? I'm not sure, but I think it is instructive. Additionally, in Vooch, the statute previously provided for abortions to be only permissible in the District of Columbia to protect the life of the mother. And in 1953, that statute changed to then allow abortion for the life or health of the mother. And what the Supreme Court said is that the statute was more restrictive previously, and it would be highly anomalous for the legislature to authorize a broader class of abortions, but then to demand a doctor, upon pain of 1 to 10 years of imprisonment, to bear the burden of proving abortion, that the abortion fell within that category. What do you say to the appellant's argument that further exceptions are specified later in the statute so that by implication suggests that these exceptions are elements, whereas the later exceptions are affirmative defenses? That's his argument. What about that? I am not prepared to argue on that point, Your Honor. I haven't compared those additional elements vis-à-vis the elements in A3. I could submit further briefing, but I don't have an answer off the top of my head, Your Honor. Let's change the subject a little bit. That has to do with the newspaper article that was published. The magistrate judge didn't say he relied on it or anything like that. You just see the article, basically. In today's age with Internet communications and so on, is it realistic to expect that any judge doesn't read a newspaper online or some kind of information? And what, if anything, do we do with that unless it's clear that the judge has used the information in that article to decide? I'm putting Judge Posner aside. I don't think it's reasonable to think that a judge in Fresno would not come across an article on the front page of the Fresno Bee. I think the fact that the defendant made those statements and it appeared there is something that is not surprising on these facts. I think the analysis is first, did the magistrate judge take an oath to be impartial? Yes. The language of the opinion clearly states that he was not going to pass wisdom on the regulations. He was merely going to determine whether the evidence proved the defendant's guilt and then proceeded to determine the issue. You may well be right, but I must say that it's one thing for a judge to read something in the press. It's another thing for him to include it in his opinion, deciding the case when it wasn't part of the record. Would you agree that if a reasonable person could infer that it played some role in his decision that there would be grounds for recusal? I think it's possible. I think the judge was in a difficult position having read the article. He could not mention it in the opinion, which could potentially raise other issues or disclose it to the parties. Judges all the time consider evidence that is considered stuff that doesn't get admitted into evidence. They themselves during a trial may exclude this, that, or that, and so they're aware of some highly prejudicial element that they kept out. They don't make it part of their decision because it's not part of the record. Was there a defense here that this was a stupid regulation, or is that kind of inherent? No, Your Honor. I don't think that was offered at trial by the defendant. Any other questions by my colleague? One final point. I would just say on that we didn't really have an opportunity to look into those recusal issues because it wasn't raised below. Thank you, Your Honor. Thank you very much, counsel. So you have a minute of rebuttal, counsel. Unless I can answer a direct question from Your Honors, I would prefer just to discuss the recusal issue since it came up. Go ahead. You know, the question about whether or not it would be a problem for a judge, as judges are typically and often exposed to potential news stories about cases, the difference here is this judge was sitting as a trier of fact, and he had the issue of guilt or innocence taken under submission at the time. That is not typically the case. If you're talking about a jury trial, the judge may be exposed to those things. The judge may consider those issues at sentencing, which is exactly what this judge did. But, counsel, as my learned colleague here who is a well-known trial judge has pointed out, if he's sitting or someone is sitting as the trier of fact and someone moves to exclude evidence and he rules on it, he's aware of it. It's there. He sees it. And anybody that sees the record can see that he did that, and yet he makes the decision having excluded whatever he excluded. What's the difference between that and what happened here? Well, Your Honor, I think in those circumstances, there's an understanding that the judge is compartmentalizing a ruling on a particular issue and discounting it if that material is excluded. In this particular case, there was no idea that he was discounting this. In fact, he included it. Just the very last point I'd make, even if the judge didn't particularly rely on whatever was read in the newspaper article, the Supreme Court case in Liljeburg, I don't know if I'm pronouncing that correctly, that was a case where the judge said he wasn't conscious of the potential conflict. Yet, nonetheless, the Supreme Court stated that that was a situation where a reasonable person who was aware of the facts and circumstances would conclude that the impartiality of that judge might be reasonably questioned. Okay. Other questions by my colleague? Thank you, both. This is obviously a very interesting case, and we appreciate the good work that you've each done. Thank you for that, and the case just argued is submitted.
judges: Schroeder, M. Smith, Rakoff